**13-1230-cv**
*Raymond Smith v. County of Suffolk*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

Term, 2013

(Submitted: January 17, 2014     Decided: January 14, 2015)

Docket No. 13-1230-cv

_____

RAYMOND SMITH,

*Plaintiff-Appellant,*

- v. -

COUNTY OF SUFFOLK, RICHARD DORMER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY
AS SUFFOLK COUNTY POLICE COMMISSIONER,

*Defendants-Appellees.*

_____

Before (On Submission):
       HALL, LIVINGSTON, *Circuit Judges,* and BRODIE, *District Judge.**

       Appeal from the February 27, 2013 judgment of the United States District Court for
the Eastern District of New York (Lindsay, *M.J.*), dismissing the case on summary judgment,
holding that plaintiff-appellant failed to produce facts demonstrating a causal connection
between his protected speech and the adverse employment actions taken against him.
Because the evidence of record, if credited by a jury, demonstrates a causal connection
between the protected speech and the adverse employment action, and because the evidence
viewed in the light most favorable to the plaintiff is insufficient to demonstrate that
defendants-appellees would have transferred and suspended plaintiff had he not engaged in
protected speech, defendants are not entitled to summary judgment. We therefore VACATE
the judgment of the district court and REMAND this case for further proceedings.

       VACATED and REMANDED.

                              Steven A. Morelli,
                                     Law Office of Stephen A. Morelli, P.C., Garden
                                     City, NY, *for Plaintiff-Appellant Raymond Smith.*

_____

*       The Honorable Margo K. Brodie, of the United States District Court for the Eastern District of New
York, sitting by designation.

Rudolph M. Baptiste,
Assistant County Attorney, *for* Dennis M. Brown,
Suffolk County Attorney, County of Suffolk,
Hauppague, NY, *for Defendants-Appellees County of
Suffolk, Richard Dormer, individually and in his capacity
as Suffolk County Police Commissioner.*

PER CURIAM:

Plaintiff-appellant Raymond Smith ("Smith") appeals the district court's grant of

summary judgment and dismissal of his First Amendment employment retaliation case. The

district court held that the record failed to demonstrate a causal connection between Smith's

protected speech and the Suffolk County Police Department's ("Department") adverse

employment actions. On appeal, Smith argues (1) that the record contains evidence

connecting Smith's protected speech to the adverse employment actions sufficient to give

rise to genuine questions of material fact, and (2) that the defendants-appellees fail to proffer

evidence warranting summary judgment on the basis that those adverse actions would have

occurred absent Smith's protected speech. We conclude that because Smith is correct on

both points, the district court erred in granting summary judgment. We therefore VACATE

the district court's judgment and REMAND this case for further proceedings.

## I.    FACTUAL BACKGROUND

Smith worked for the Department from 1981 until his retirement in 2008. Smith rose

to the rank of lieutenant, where his duties included supervising a squad of officers, planning

community events, responding to complaints, coordinating with other squads and precincts,

preparing computerized crime reports, and conducting motor patrols.

Smith was investigated, warned, or otherwise disciplined for misconduct related to the use of his Department-owned computer[1] on several occasions leading up to the incidents at issue. In 1997, after it was discovered that Smith had installed a modem on a computer without authorization, he was warned not to install, reconfigure, or tamper with Department programs or computers. In 2000, after investigating an incident of computer tampering that had prevented other users from accessing his computer, the Department reprimanded Smith for computer misuse. Smith was issued a written directive to read and familiarize himself with the Department's computer policy. The directive included the explicit policy statements that "Department computers are for official use only," use of "any Department information or equipment for personal use or gain is strictly prohibited," and "Internet access that is made available is for Department use only." J.A. 327–28. Six years later, in 2006, it was discovered that Smith had used a computer to make flyers for a Fantasy Baseball League. Although the Department found this to be a minor indiscretion and did not take formal disciplinary action, it was recommended that Smith receive guidance regarding the use and misuse of Department equipment.

The events giving rise to the case now on appeal were set in motion on July 27, 2007, when Smith was required to appear and present certain documents at a New York State Department of Motor Vehicles hearing ("DMV hearing") related to an arrest that he conducted. Smith failed to appear on time, and when the Department asked about his delay, Smith claimed that while preparing for the hearing, he was forced to search for and review

---

[1]      Hereafter, all computers referenced in this opinion were property of the Suffolk County Police Department.

3

his case notes on his computer because they were not in the usual file. The Department conducted a forensic examination of Smith's computer to verify his excuse.

The examination revealed that Smith "had repeatedly, and without authorization, communicated by email with a number of representatives of the information media, as well as others, about matters pertaining to Departmental business." J.A. 60. This communication began in 2004 and continued throughout 2007, when Smith began corresponding with CNN commentator Jeffrey Toobin about the high-profile case in which Martin Tankleff was convicted for the murder of his parents, only to be exonerated in 2007 after serving seventeen years in prison. In a "tip" emailed to Toobin, Smith contended that the homicide detective may have helped plan the murder and orchestrated a cover-up, that the district attorney appeared to have an ethical conflict and was protecting the actual murderers, and that there was a history of documented abuses committed by the Suffolk County Police Homicide Squad. The examination also revealed that in May 2007 Smith exchanged emails with *Newsday* correspondent Christine Armario expressing concern that the Department's policy of arresting unlicensed drivers led to ethnic discrimination. In these instances and others, Smith signed his emails in his official capacity as "Lieutenant Raymond F. Smith, Sixth Precinct."

On January 2, 2008, the Department transferred Smith to an administrative, non-supervisory position working in an office without a computer. The new position precluded him from earning overtime or night shift pay, and he suffered a ten percent pay cut because he was no longer permitted to work the more lucrative midnight shift.

Following negotiations with Smith's union representative, the Department served Smith with two disciplinary charges on January 31, 2008, both related to his emails to Armario. Charge Two was for conduct unbecoming an officer and alleged that Smith used his Departmental computer and email to "improperly communicate with the media . . . regarding Department policy in a manner tending to bring discredit to the Police Department." J.A. 537. The following day, Smith was suspended for thirty days without pay. On February 7, 2008, Smith was served with notice of thirty-two additional disciplinary charges for various violations of the Department's rules and procedures, including: missing the DMV hearing, expressing his personal opinion in a manner tending to discredit the Department, sending e-mails discrediting the Department, using Departmental email to conduct non-Departmental business, accessing non-work related websites, using profanity in his emails, and failing to refer media inquiries to the Department's Public Information Section. Upon returning to work in early March 2008, Smith was transferred to a different administrative position. He decided to retire voluntarily at the end of April 2008 rather than face further disciplinary proceedings.

In March 2010, Smith filed his complaint in this case alleging under 42 U.S.C. § 1983 that defendants Suffolk County and County Police Commissioner Richard Dormer ("defendants") retaliated against him for exercising his First Amendment right to freedom of speech. Smith also brought a claim for violation of Article 1, Section 8 of the New York State Constitution. The alleged retaliatory acts included investigation into his personal affairs, serving him with disciplinary charges, reassigning him to a lower-paying administrative position, suspending him without pay, and eventually forcing his retirement.

5

## II. LEGAL FRAMEWORK GOVERNING FIRST AMENDMENT RETALIATION CLAIMS

To survive summary judgment on a First Amendment retaliation claim, a public employee must establish a prima facie case by "bring[ing] forth evidence showing that [1] he has engaged in protected First Amendment activity, [2] he suffered an adverse employment action, and [3] there was a causal connection between the protected activity and the adverse employment action." *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007).

As relevant here, the First Amendment protects speech uttered by an employee in his or her capacity as a citizen regarding a matter of public concern. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014). To demonstrate a causal connection "a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006) (internal quotation marks omitted). A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action. *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004) (internal citation omitted). Since a direct showing requires plaintiff to provide "tangible proof" of retaliatory animus, "conclusory assertions of retaliatory motive" are insufficient. *Id.*

Once the plaintiff "makes out a prima facie retaliation claim, a government defendant may still receive summary judgment if it establishes its entitlement to a relevant defense." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 114 (2d Cir. 2011). The Supreme Court identified one such defense in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). "Because protected speech could not substantially cause an adverse action if the employer would have taken that action in any event," *Nagle v. Marron*, 663 F.3d 100, 111

6

(2d Cir. 2011), once the employee has established a prima facie case, the employer may still be entitled to summary judgment based on the *Mount Healthy* defense by demonstrating "by a preponderance of the evidence that it would have taken the same adverse employment action 'even in the absence of the protected conduct.'" *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (quoting *Mount Healthy*, 429 U.S. at 287), *abrogated on other grounds by Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *see also Anemone*, 629 F.3d at 114.

A government employer may also challenge and, if successful, avoid liability under the balancing test established in *Pickering v. Board of Education*, 391 U.S. 563 (1968), which safeguards the government's interest "as an employer, in promoting the efficiency of the public services it performs through its employees," *Piscottano v. Murphy*, 511 F.3d 247, 269 (2d Cir. 2007) (quoting *Pickering*, 391 U.S. at 568). Under *Pickering*, defendants bear the burden of demonstrating that "the plaintiff's expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression." *Anemone*, 629 F.3d at 115 (quoting *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008)). Defendants need not present evidence that such harm or disruption—which may include "having the judgment and professionalism of the agency brought into serious disrepute"—has in fact occurred, but only that it made a "reasonable determination that the employer's speech creates the potential for such harms." *Piscottano*, 511 F.3d at 271.

### III.   PROCEDURAL HISTORY

Defendants moved for complete summary judgment, and Smith filed a cross-motion for partial summary judgment on the issue of liability. In a written order resolving both

motions, the district court (Lindsay, *M.J.)* reviewed the elements of Smith's prima facie case. *Smith v. Cnty. of Suffolk*, 2013 WL 752635 (E.D.N.Y. Feb. 27, 2013). The court determined that Smith's communications to *Newsday* and CNN constituted speech made in his capacity as a citizen on a matter of public concern, and as such were protected under the First Amendment. The court also found that Smith suffered adverse employment actions including the initiation of disciplinary proceedings, his reassignment and reduction in pay, and the thirty-day suspension without pay. The court held, however, that Smith failed to demonstrate a sufficient connection between his speech and the adverse actions he suffered.

The court also stated in a footnote that although it need not reach the issue, defendants would "likely" succeed on the *Mount Healthy* defense by showing that they would have taken the same actions even if Smith had not sent the media emails. *Id.* at *17 n. 6. The court outlined but did not apply the *Pickering* test, *id.* at *7, nor hint at defendants' likelihood of success on that defense.

The court granted defendants' motion as to Smith's federal claim, dismissed the state claim without prejudice to renewing it in state court, and denied Smith's motion for partial summary judgment.

## IV.    SCOPE OF THE APPEAL

Given the district court's holdings, the arguments advanced on appeal, and the evidence proffered to support those arguments, the issues before us are few and narrowly drawn. The scope of this appeal is therefore most effectively captured by initially identifying and declining to address the issues that fall outside its boundaries.

First, we note with interest that defendants do not cross-appeal or otherwise challenge the district court's rulings that (1) by speaking on a matter of public concern in his capacity as a citizen, rather than an employee, Smith had engaged in activity protected by the First Amendment, and (2) Smith suffered adverse employment actions. Since the defendants do not now contest these two elements of Smith's prima facie case, we will not address the district court's conclusions with respect to them.

The district court outlined the *Pickering* test. Because it held, however, that there was no causal connection between Smith's engaging in protected speech and the adverse employment actions, and therefore no prima facie case of retaliation, it did not conduct a *Pickering* analysis. On appeal, defendants only mention *Pickering* in passing. While the facts of this case—including the charges filed against Smith and the Departmental policies upon which they were based—appear to implicate a *Pickering* defense, without a decision below with respect to that defense or an argument on appeal advancing that defense, we have no basis on which to address that issue. The defendants' burden in this regard is not ours to meet, and the current posture of this case places any *Pickering* determination outside the province of this court.

The district court also touched upon qualified immunity in a footnote, suggesting that it provided an additional ground for granting summary judgment in favor of defendants because "[t]he record is simply devoid of any evidence supporting Smith's claim that he was disciplined for reasons other than violating departmental policy with respect to computer usage." *Smith*, 2013 WL 752635, at * 17 n.5. Defendants raise qualified immunity on appeal, arguing that since there is no prima facie case there can be no constitutional violation.

Because we hold that Smith did in fact establish a prima facie case and because qualified immunity was not dispositive below nor sufficiently briefed on appeal, a decision regarding the applicability of qualified immunity by this court at this time is also inappropriate.

We begin our analysis, therefore, at the third and final prima facie element: whether there is a causal connection between what the district court identified as Smith's protected speech and the adverse actions he suffered. We will then address an ostensible *Mount Healthy* defense since the district court suggested the "likely" outcome of its analysis of that issue and because both parties raise and brief that issue on appeal.[2]

## V.    DISCUSSION

Smith argues that the district court erred in ruling that the evidence did not demonstrate a sufficient causal connection between his protected speech and the adverse employment actions he suffered. Smith also challenges the court's statement that the defendants would likely succeed on their *Mount Healthy* defense. Defendants counter that Smith failed to present evidence establishing a causal connection and that the court "aptly noted" that even if Smith established a prima facie case, they would have been entitled to the *Mount Healthy* defense.

### a.  Standard of Review

We review *de novo* orders granting summary judgment to determine whether, as the movant contends, there was no genuine issue as to any material fact such that the movant was entitled to judgment as a matter of law. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d

---

[2]    *Cf. Mount Healthy*, 429 U.S. at 287 (since the plaintiff-respondent carried his burden at the prima facie stage, "the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision;" the Supreme Court vacated and remanded the judgment because it "[could] not tell from the District Court's opinion and conclusions . . . what conclusion [it] would have reached had [it] applied this test").

292, 300 (2d Cir. 2003). We "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 202 (2d Cir. 2013) (internal quotation marks and alterations omitted). Summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**b. Causal Connection**

Smith challenges the district court's decision on grounds that he presented both direct evidence of retaliatory intent and indirect evidence of temporal proximity between his protected speech and the adverse employment actions, and of disparate treatment.[3] The court did not address direct evidence of retaliatory intent beyond stating that Smith had not offered any. *Smith*, 2013 WL 752635 at *13. We disagree. The plain language of several of the disciplinary charges at the heart of the adverse actions directly implicates not only the fact that Smith had engaged in protected speech, but also the content of that speech. Charge 2 of the January 31, 2008 Notice of Charges, and Charges 1, 2, and 4 of the February 7, 2008 Notice of Charges are related to individual emails Smith sent to CNN and *Newsday* reporters. Those charges state that Smith commented on Department policy "in a manner tending to bring discredit to the Police Department." J.A. 537, 531–43. The Department thereby both characterized the content of the speech and cited that characterization as the basis for several disciplinary charges. Various internal Department memoranda reveal similar direct evidence of a causal connection. For example, a March 2008 Internal Affairs Bureau ("IAB")

---

[3]    Because we find Smith's direct evidence of retaliatory intent sufficient to survive summary judgment, we do not pass upon the sufficiency of his indirect evidence.

memorandum stated that in the emails discovered through the forensic exam, Smith "had nothing positive to say about the conduct of Department business; conversely, the nature of many of these emails was such that they tended to bring discredit to the Department." J.A. 60.

Given the plain language of the charges against Smith and the internal memoranda, a reasonable juror could conclude that the Department's actions were motivated, at least in part, by a retaliatory animus. Smith has presented direct evidence, which, if credited by a jury, could prove a causal connection between his protected speech and the adverse employment actions. The district court erred in determining otherwise.

Smith having presented a prima facie case of First Amendment retaliation, we now turn to whether defendants are nonetheless entitled to summary judgment in their favor by showing "that [the Department] would have taken the same adverse action[s] in the absence of the protected speech." *Anemone*, 629 F.3d at 114 (quoting *Heil v. Santoro*, 147 F.3d 103, 109 (2d Cir. 1998)).

### c. *Mount Healthy* Defense

Since the district court granted summary judgment based on the erroneous conclusion that Smith failed to establish the necessary causal connection, it only had occasion to address in passing whether the defendants would have taken the same adverse actions absent Smith's protected speech. It did so cursorily in a footnote stating:

> Although the Court need not reach this issue, even if plaintiff had satisfied his initial burden, Smith's history of continued and extensive misuse of the Department's computer for personal and non-police business would likely be sufficient to grant defendants' motion for summary judgment on the ground that defendants would have initiated the disciplinary proceedings,

suspension and removal of Smith from a supervisory position even if he
had not sent the media e-mails.

*Smith,* 2013 WL 752635, at *18 n. 6. (citing *Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d

Cir. 2000)).

While the *Mount Healthy* defense was not determinative below, it takes on significant

import on appeal given our conclusion that Smith established a prima facie case. The

operative question is whether defendants have demonstrated that a reasonable jury would

have to find by a preponderance of the evidence that the Department would have

investigated, transferred, and suspended Smith absent his citizen-media speech.[4] *See Nagle,*

663 F.3d at 112 ("Appellees are entitled to summary judgment if they can show that a

reasonable jury would have to find by a preponderance of the evidence that Appellees would

have dismissed [Appellant] even if they had not learned of her [protected] speech.");

*Anemone,* 629 F.3d at 115; *Diesel,* 232 F.3d at 107. The unprotected conduct, standing alone,

must justify the adverse actions.

We begin by summarizing Smith's unprotected conduct as reflected in the various

disciplinary charges.[5] On February 7, 2008, the Department served Smith with charges of

---

[4]      Like the district court, we reject any claim that the Department "eventually forc[ed] Smith into
retirement," *Smith,* 2013 WL 752635, at * 13 n. 2. Nothing on the record supports such a conclusion, and
Smith admitted to filing his retirement papers voluntarily.

[5]      Several charges state that Smith emailed various unidentified persons and spoke in a way that
"tended to bring discredit to the Police Department." These emails, as instances of speech, occupy a grey area
in our analysis. On the one hand, the district court specifically ruled that Smith's emails to *Newsday* and CNN
are subject to First Amendment protection, and these emails were not sent to either of those recipients. On
the other hand, the charges resulting from those emails implicate the type of speech that is protected and
describe the content of that speech using the exact phrase, viewed in the light most favorable to Smith, that
would indicate a retaliatory animus: "tended to bring discredit to the Police Department." In an abundance of
caution – and mindful of the fact that defendants bear the burden of proof both on the *Mount Healthy*
defense, *Anemone,* 629 F.3d at 115, and on summary judgment – we will not consider any charges related to
emails characterized as "tending to bring discredit," regardless of their recipient. Similarly, we will not
consider any charges based on emails sent to a CNN or *Newsday* email addresses, regardless of whether those

misconduct that included sending emails to outsiders: "disclosing an arrestee's Penal Law and V&T charges," (Charge 7, Specification #1); discussing/regarding "a prior Suffolk County Police Department investigation" (Charge 7, Specification #2; Charge 8); discussing a real estate deal (Charges 20; 32); using profanity (Charges 21; 29); and "for personal reasons" (Charges 23; 26; 28; 29; 30). J.A. 541−51. Smith was also charged with failing to refer a media inquiry to the proper departmental authorities (Charge 11), accessing numerous non-work related internet websites while on duty for his own personal use and entertainment on several occasions (Charges 13, 14, 15, 16), and accessing non-work related websites to pay bills (Charge 17). He was also charged for failing to appear at the DMV hearing (Charge 1, first notice).  Defendants have thus presented considerable evidence of extensive misconduct that is separate and distinct from the incidents of speech the district court determined were subject to First Amendment protection.

In their arguments to us on appeal, defendants merely point to this unprotected conduct and summarily state that "[a]ny objective observer in view of the record evidence is bound to [conclude] . . . that irrespective of [Smith's] expression of his opinion to news media and others, reasonable and adequate grounds supporting . . . charges for misconduct for flagrant disregard of departmental computer and Internet use rules existed." Appellee's Br. 37. The *Mount Healthy* defense, however, demands more than this type of general conclusion, particularly on summary judgment. Much as plaintiffs are required at the prima facie stage to demonstrate not only the existence of protected speech but a causal connection between that speech and the adverse action, defendants asserting a *Mount Healthy*

---

charges expressly mention or allude to the email content. We note our analysis in this regard is in no way intended to limit what evidence may be considered by the finder of fact on remand.

14

defense may not rely solely on the occurrence of unprotected misconduct: they must also articulate and substantiate a reasonable link between that misconduct and their *specific* adverse actions. A general statement that the employer would have taken *some* adverse action will not suffice. *See Diesel*, 232 F.3d at 107 ("If a plaintiff establishes [the] three elements [of a prima facie case], a defendant may avoid liability by showing 'by a preponderance of the evidence that it would have reached *the same decision as to the employment action* even in the absence of the protected conduct.'" (quoting *Mount Healthy*, 429 U.S. at 287 (internal brackets omitted and emphasis added))); *Greenwich Citizens Comm., Inc. v Counties of Warren & Washington Indus. Dev. Agency*, 77 F.3d 26, 32 (2d Cir. 1996) (describing the *Mount Healthy* defense as tantamount to the "hypothetical question, 'Would the defendant have taken *the same adverse action* even if the impermissible reason had not existed?'." (emphasis added)).

Turning to the adverse actions, we first examine the investigation itself, which the Department undertook based on Smith's explanation for his failure to appear at the DMV hearing. Thus, the investigation was prompted not by Smith's citizen-media speech but by separate misconduct. Practically speaking, the disciplinary wheels were in motion before the Department ever learned about Smith's protected speech. A constitutionally sound investigation, however, does not insulate any resulting adverse actions from constitutional scrutiny.

Given Smith's previous and continued computer-related transgressions, a jury might conclude that the Department transferred Smith because the new position did not require him to use a computer. This theory, however, is entirely speculative and draws all inferences in favor of the defendants rather than Smith. A reasonable jury might just as easily infer that

because the Department did not transfer Smith following his similar misconduct in the past, he was transferred because of his protected citizen-media speech, rather than in spite of it as defendants argue. Defendants have thus failed to present any evidence that the Department would have transferred Smith absent his citizen-media speech. They point to Smith's extensive unprotected conduct that violated the Department's policies, but fail to show affirmatively that that conduct alone would have resulted in a transfer.[6]

We reach a similar conclusion regarding Smith's thirty-day suspension without pay. The record contains scant evidence on the details surrounding Smith's suspension save that it was imposed on February 1, 2008, upon the approval of Commissioner Dormer. While the record does not identify the precise reason for the suspension, sufficient circumstantial evidence exists from which a reasonable jury could infer it was primarily, if not entirely, based on the protected citizen-media speech. Smith was suspended the day after the Department issued its initial two charges. Those charges pertained solely to the protected speech. Smith was not served with any charges related to his unprotected misconduct until a week later. Given this timeline a jury could conclude that the thirty-day suspension was in response to Smith's citizen-media speech and unrelated to any of his unprotected conduct. The record, moreover, contains evidence that tends to support such a conclusion, including

---

[6]    In its analysis of causal connection, the district court stated with respect to Smith's transfer that "there is record evidence that Deputy Commissioner Shannon determined that Smith should be removed from a supervisory position since the plaintiff had previous warnings concerning the misuse of the police computer," citing a declaration of defendants' counsel. *Smith*, 2013 WL 752635, at *17. The portion of the declaration the court states, *inter alia*, that "Deputy Commissioner Shannon noted that the plaintiff should not be a supervisor since the plaintiff had previous warnings on the misuse of the computer, (Exhibit 'O' p.85 lines 11-24)." J.A. 720-21. The court notes, however, that "defendants refer to Exhibit O at page 85 lines 11-24, but have not attached this page to the Declaration." *Smith*, 2013 WL 752635, at n.4. We do not assign significant weight to defense counsel's interpretation of witness testimony when that testimony is not included in the record. Defense counsel's representation falls short of the type of evidence defendants must proffer to meet their *Mount Healthy* burden.

Deputy Commissioner Shannon's acknowledgement that use of computers for non-work related matters is not uncommon and that he is unaware of any instances when an officer has been disciplined—let alone suspended—for such behavior.

On the record before us, the defendants have failed to demonstrate that a reasonable jury must conclude by a preponderance of the evidence that the Department would have taken these adverse actions absent Smith's having engaged in protected citizen-media speech. *See Greenwich Citizens Comm., Inc.*, 77 F.3d at 32 (A defendant can "avoid liability by showing that it would have taken the same action in the absence of the impermissible reason."). We do not dictate what might constitute sufficient evidence to clear that bar in this instance. Perhaps, as Smith suggests in his disparate treatment argument, evidence showing that the Department had previously suspended or transferred an officer for similar non-protected misconduct would suffice. The record here, however, does not contain any documentation regarding Smith's transfer or suspension that provides insight into the Department's decision-making process or any stated reasons underlying those actions.

Put simply, the evidence of record before us permits only inferences. Those inferences may be drawn in either party's favor, and we require more than inferences from an employer seeking summary judgment based on the *Mount Healthy* defense.

Given the language of the charges against Smith related to his media communications, which the district court classified as protected speech, juxtaposed with the Department's computer use policy, a jury must determine whether defendants would have transferred Smith to an administrative position or suspended him for thirty days notwithstanding his protected speech. We express no view on that issue but merely conclude

that defendants have failed to produce evidence and advance arguments that vitiate questions of material fact at the heart of the primary issue now before us: Why did the Department discipline Smith in the manner in which it did? As we have previously held, "[s]ummary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision." *Morris*, 196 F.3d at 110.

## VI.    CONCLUSION

To summarize, because defendants do not challenge them on appeal, we do not revisit the district court's conclusions that Smith's media communications enjoyed First Amendment protection as citizen speech on a topic of public concern and that the Department's employment actions were adverse to Smith. We also express no opinion as to whether, in the absence of the direct evidence offered by Smith, Smith would have been able to prevail on the basis of his indirect evidence of retaliatory intent. We conclude that Smith has proffered sufficient direct evidence of retaliatory intent from which a reasonable jury could find a causal connection between his protected speech and the Department's adverse employment actions.  Accordingly, Smith has established a prima facie case of First Amendment retaliation.

Because the defendants have not met their burden to establish at this stage of the proceedings that the Department would have transferred Smith to an administrative position or suspended him for thirty days without pay based solely on his unprotected conduct, defendants are not entitled to summary judgment based on the *Mount Healthy* defense.

The record evidence raises several genuine questions of material fact such that an award of summary judgment in the defendants' favor is unjustified.

We therefore VACATE the judgment and REMAND the case for further proceedings not inconsistent with this opinion.